IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT ) <br> EMPLOYEES, AFL-CIO, ) <br> 80 F Street, N.W., ) <br> Washington, D.C. 20001, ) <br> 202-639-6424, ) <br>   ) <br> Plaintiff, ) <br>   ) <br> v. ) <br>   ) <br> DONALD J. TRUMP, ) <br> in his official capacity as President ) <br> of the United States ) <br> 1600 Pennsylvania Avenue, N.W., ) <br> Washington, D.C. 20035, ) <br>   ) <br> and ) <br>   ) <br> UNITED STATES OFFICE OF ) <br> PERSONNEL MANAGEMENT ) <br> 1900 E Street, N.W., ) <br> Washington, D.C. 20415, ) <br>   ) <br> and ) <br>   ) <br> JEFF T.H. PON, ) <br> in his official capacity as Director of the ) <br> U.S. Office of Personnel Management, ) <br> 1900 E Street, N.W., ) <br> Washington, D.C. 20415, ) <br>   ) <br> Defendants. ) | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF**

1. This action seeks declaratory and injunctive relief with respect to the Executive Order

   issued by President Donald J. Trump on May 25, 2018, entitled "Executive Order

1

Ensuring Transparency, Accountability, and Efficiency in Taxpayer Funded Union Time Use".

2. The "Executive Order Ensuring Transparency, Accountability, and Efficiency in Taxpayer Funded Union Time" seeks to impermissibly rewrite portions of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101, *et seq.*, (hereinafter "Chapter 71") which governs labor relations in the federal civilian workplace. In particular, this order, without any congressional imprimatur, seeks to restrict 5 U.S.C. § 7131, Official Time. This Executive Order will be referred to herein as "the Official Time Order."

3. The Official Time Order seeks to prohibit employees from receiving official time to prepare, file, and pursue negotiated grievances on behalf of their labor organization, i.e., union, and prohibits employees who are union representatives from receiving official time for the purpose of representing another individual employee or group of employees in negotiated grievances brought on behalf of such individual employee or group of employees.

4. The Official Time Order, however, does not prohibit individual employees from receiving official time to prepare, file, and pursue negotiated grievances on behalf of themselves.

5. The Official Time Order also purports to unilaterally set a limit on the number of hours of official time that may be granted to employee representatives of federal sector labor organizations under 5 U.S.C. § 7131.

6. The Official Time Order contains no rationale for distinguishing between union grievances, union representatives, and individual employee grievances. The Official Time order also contains no rationale for imposing the specific cap on official time.

7. The Official Time Order violates the First Amendment of the United States Constitution. Without any valid justification, it singles out labor organizations and their representatives for disparate, negative treatment as compared to individuals. In so doing, the Official Time Order restrains and retaliates against AFGE and its union-member employee representatives in and for the exercise of their respective rights to expressive association.

8. Further, the Official Time Order is contrary to Chapter 71, and the Separation of Powers mandated by the United States Constitution, because it seeks to vest agencies with unilateral authority to determine whether a particular amount of official time is reasonable, necessary, and in the public interest.

9. The Official Time Order is unlawful on its face. Implementation and enforcement of the Official Time Order should be enjoined.

## JURISDICTION

10. Jurisdiction over this action is conferred upon the United States District Court by 28 U.S.C. §§ 1331 and 1343.

11. Plaintiff seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

## VENUE

12. The District of Columbia is a proper venue for this action under 28 U.S.C. § 1391(e) because plaintiff American Federation of Government Employees is headquartered here, and because defendants' principal offices are located here.

## PARTIES

13. The American Federation of Government Employees, AFL-CIO, (hereinafter "AFGE") is a national labor organization and unincorporated association having its headquarters at: 80 F Street N.W., Washington, D.C. 20001.  AFGE represents approximately 650,000 federal civilian employees in agencies and departments across the federal government.

14. AFGE and its affiliated councils and locals are the certified exclusive representative, under 5 U.S.C. § 7111, of the employees they represent.

15. AFGE is an exclusive representative of an appropriate unit in an agency.

16. Defendant Donald J. Trump is the President of the United States. He is sued solely in his official capacity. In that capacity, he issued the Executive Order challenged in this suit.

17. Defendant U.S. Office of Personnel Management ("OPM") is a federal agency, headquartered in Washington, D.C., charged with implementing the Executive Order under challenge.

18. Defendant Jeff T.H. Pon is the Director of OPM ("Director"), located in Washington, D.C. He is sued solely in his official capacity.

## FACTS

**The American Federation of Government Employees**

19. AFGE, on its own and through its affiliated councils and locals, represents employees within bargaining units for which AFGE and its councils and locals have been certified as the exclusive representative by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances brought pursuant to applicable negotiated grievance procedures, representing employees in formal discussions or investigative examinations pursuant to 5

U.S.C. § 7114(a)(2), litigating employees' collective and individual rights before administrative agencies and in court, and generally acting as federal civilian employees' exclusive representative for the purpose of collective bargaining with the federal government.

20. AFGE, on its own and by and through its members and officers, is presently engaged in collective bargaining with agencies of the federal government.

21. AFGE, on its own and by and through its members and officers, is presently engaged in representing federal employees in grievances brought pursuant to negotiated grievance procedures.

22. AFGE, and its members and officers, both publicly and privately engage in multiple forms of expression, such as promoting unity of action in matters affecting the mutual interest of federal employees, promoting organized labor, and advocating for workers' rights and for the improvement of government service.

23. The federal sector is an open shop.

24. Members and officers of AFGE voluntarily choose to associate with AFGE in pursuit of the common goals referenced above, and vice versa.

25. The Official Time Order will unduly burden AFGE's collective efforts on behalf of these shared goals if not enjoined.

26. AFGE has a statutory duty of fair representation to its bargaining unit employees in the negotiated grievance and collective bargaining processes. AFGE uses official time to meet this duty of fair representation.

27. The Official Time Order is intended to and will harm AFGE in carrying out its duty of fair representation owed to the bargaining unit employees that AFGE represents.

**The Federal Service Labor-Management Relations Statute**

28. Chapter 71 creates the Federal Labor Relations Authority ("the Authority") and charges it with taking the necessary and appropriate actions to effectively administer the provisions in Chapter 71.

29. 5 U.S.C. § 7102 protects the right of employees to form, join, or assist any labor organization freely and without fear of penalty or reprisal.

30. Section 7102 further guarantees the right of employees to act as a representative of a labor organization, to present the labor organization's views to agency officials, Congress, and other appropriate authorities, and to engage in collective bargaining over conditions of employment through representatives of their choosing.

31. 5 U.S.C. § 7114 (a)(1) creates a duty of fair representation by requiring exclusive representatives to "represent[] the interests of all employees in the unit it represents without discrimination and without regard for labor organization membership."

32. 5 U.S.C. § 7114(a)(2) requires that an exclusive representative of an appropriate unit in an agency be given a genuine and reasonable opportunity to be present at (A) a formal discussion between any agency representative and one or more bargaining unit employees or their representative concerning, *inter alia*, any grievance; and (B) any investigative examination of a bargaining unit employee if the employee reasonably believes discipline may result from the interview and the employee requests representation.

33. 5 U.S.C. § 7114 (b)(1) provides that agencies have a duty to bargain in good faith that includes the obligation to approach negotiations with a sincere resolve to reach agreement.

34. 5 U.S.C. § 7121 requires all collective bargaining agreements negotiated under Chapter

6

71 to include a negotiated grievance procedure concluding in binding arbitration.

35. Section 7121 requires that the negotiated grievance procedure must assure that an exclusive representative has the right, on it own behalf and on the behalf of represented employees, to present and process grievances.

36. Section 7121 also requires that employees have the right to present grievances on their behalf and assures the right of the exclusive representative to be present during the grievance proceeding.

37. Section 7121 requires that the rights granted therein be meaningful.

38. 5 U.S.C. § 7131(a) provides that employees representing an exclusive representative shall be authorized official time to negotiate a collective bargaining agreement.

39. 5 U.S.C. § 7131(c) provides that the Authority shall determine, except as provided in § 7131(a), whether employees are entitled to official time in any phase of proceedings before the Authority.

40. 5 U.S.C. § 7131(d) provides that "any employee representing an exclusive representative," or "in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest."

41. In other words, union representatives shall be granted official time in any amount that the agency and the union mutually agree to be reasonable, necessary, and in the public interest.  Likewise, any employee who is a member of a bargaining unit represented by a union shall be granted official time in connection with any other matter covered by Chapter 71 in any amount that the agency and the union mutually agree to be reasonable,

necessary, and in the public interest.

42. 5 U.S.C. § 7131(d) provides that union officials and employees shall be granted official time in an amount the agency and the exclusive representative agree are reasonable, necessary and in the public interest.

43. Section 7114(b)(1) requires that negotiations concerning Section 7131(d) be approached with a sincere resolve to reach agreement.

**The Official Time Order**

44. The Official Time Order seeks to establish several extra-statutory restrictions on the use of official time under Chapter 71 including, *inter alia*, creating an aggregate annual limit for the amount of official time all employees in a bargaining unit may use and limiting an individual employee's use of official time to twenty-five percent of the employee's duty time per fiscal year.

45. Section 2(i) of the order seeks to redefine official time granted to an employee under 5 U.S.C. § 7131 as "taxpayer-funded union time," although Chapter 71 contains no such term.

46. Section 2(j) of the Official Time Order purports to establish a "union time rate" based on the total number of duty hours in the fiscal year that employees in a bargaining unit used for "taxpayer-funded union time," divided by the number of employees in such bargaining unit.

47. There is no statutory basis for a "union time rate" as used in the Official Time Order.

48. As "taxpayer-funded union time" under the order means any official time authorized under 5 U.S.C. § 7131, the order's definition of "union time rate" does not distinguish

8

between official time authorized under §§ 7131(a), (c) or (d). Further, the definition of "union time rate" does not distinguish between official time used by union officials or by employees.

49. Section 3(a) seeks to predetermine what constitutes "reasonable, necessary, and in the public interest" by setting forth a presumption that a "union time rate" in excess of 1 hour is not reasonable, necessary, or in the public interest and requires agencies to commit the time and resources necessary to achieve a negotiated rate of 1 hour or less.

50. Similarly, Section 3(a) of the Official Time Order seeks to vest agencies with unilateral authority to determine whether a particular amount of official time is reasonable, necessary, and in the public interest, in that it purports to forbid agencies from agreeing to any amounts of official time that are not reasonable, necessary, and in the public interest.

51. Section 3(b) requires agency heads to report agreements or proposals to the Director of OPM within 15 days that would authorize amounts of official time under § 7131(d) that would cause the union time rate, which includes official time authorized under §§ 7131(a), (c), and (d), to exceed 1 hour.

52. Section 4(a)(ii)(1) requires employees to spend seventy-five percent of their paid time in each fiscal year performing "agency business." In other words, this subsection limits the use of official time to twenty-five percent of an employee's duty time.

53. Sections 4(a)(ii)(2) and (3) create an exception for §§ 7131(a) and (c) official time. These subsections permit an employee who has received more than twenty-five percent official time to continue to receive official time for bargaining under § 7131(a) and for appearing before the Authority under § 7131(c) provided that any official time in excess of twenty-five percent rolls over to the next fiscal year.

54. In effect, Section 4(a)(ii) purports to prohibit an employee who spends 50% of a year bargaining an agreement or appearing before the Authority from receiving any official time under § 7131(d) for at least two years. That is, the Official Time Order mandates a penalty for employees who exercise their statutory right to engage in protected activity.

55. Section 4(a)(v) of the Official Time Order purports to prohibit any employee from using official time "to prepare or pursue grievances" brought against an agency under any collectively bargained grievance procedure unless: (a) such use is "otherwise authorized by law or regulation;" (b) the employee is preparing or pursuing a grievance brought on the employee's own behalf; or (c) the employee is to appear as a witness in a grievance proceeding.

56. No law or regulation other than 5 U.S.C. § 7131 governs the use of official time to prepare or pursue a grievance under an agreement collectively bargained pursuant to Chapter 71.

57. Section 4(a)(v) thus purports to categorically prohibit the use of official time to: (a) prepare or pursue grievances brought on behalf of a labor organization itself or brought to vindicate a labor organization's institutional interests; or (b) to provide a union representative to another employee.

58. Section 4(a)(v)(B) authorizes an employee to receive official time to challenge an adverse personnel action taken against the employee in retaliation for engaging in protected whistleblower activity. But it is unclear how this exception is any different from the one in Section 4(a)(v)(A) authorizing official time to an employee to prepare for and present a grievance filed on the employee's behalf.

## COUNT I

*Violation of the First Amendment*

59. AFGE realleges and incorporates by reference the allegations contained in paragraphs 1 through 58.

60. Section 4(a)(v) purports to categorically prohibit the use of official time to: (a) prepare or pursue grievances brought on behalf of a labor organization itself or brought to vindicate a labor organization's institutional interests; or (b) to provide a union representative to another employee.

61. There is no valid basis to distinguish grievances brought by the union *qua* union or grievances in which a union representative seeks to represent another employee from grievances brought on an employee's own behalf or instances in which an employee is to appear as a witness in a grievance proceeding.

62. By singling out labor organizations for disparate treatment, Section 4(a)(v) of the Official Time Order unlawfully restrains and retaliates against AFGE and its union-member representatives, separately and collectively, in and for the exercise of their rights to expressive association.  Section 4(a)(v) therefore violates the First Amendment to the United States Constitution and should be enjoined.

## COUNT II

*Violation of the Separation of Power/ Ultra Vires*

63. AFGE realleges and incorporates by reference the allegations contained in paragraphs 1 through 62.

64. AFGE has a non-statutory right of action to enjoin and declare unlawful Executive action

that is *ultra vires*.

65. The United States Constitution does not vest the President with the power to legislate.

66. The Official Time Order is an attempt to exercise legislative power specifically withheld by Congress.

67. Sections 2(j) and 3(a) of the Official Time Order seek to vest agencies with unilateral authority to determine whether a particular amount of official time is "reasonable, necessary, and in the public interest" by purporting to establish a "union time rate" with no statutory basis to artificially and arbitrarily limit the amount of § 7131(d) official time an agency will authorize.

68. By purporting to vest the determination of whether an amount of official time satisfies the requirements of 7131(d) solely in an agency, Section 3(a) of the Official Time Order is contrary to 5 U.S.C. § 7131. It is therefore *ultra vires* and void.

69. By establishing a so-called "union time rate" that is not set forth in any statute and then using that rate to purportedly determine when a collective bargaining agreement that allows official time pursuant to 5 U.S.C. § 7131(d) may be considered "reasonable, necessary, and in the public interest", Sections 2(j) and 3(a) of the Official Time Order are contrary to 5 U.S.C. § 7131.  They are therefore *ultra vires* and void.

### COUNT III

*Violation of the Separation of Powers/ Ultra Vires*

70. AFGE realleges and incorporates by reference the allegations contained in paragraphs 1 through 69.

71. AFGE has a non-statutory right of action to enjoin and declare unlawful Executive action

that is *ultra vires*.

72. The United States Constitution does not vest the President with the power to legislate.

73. The Official Time Order is an attempt to exercise legislative power specifically withheld by Congress.

74. Section 4(a)(ii) purports to restrict employees to using official time no more than twenty-five percent of their duty time in each fiscal year and penalizes employees who use more than that amount in a given fiscal year by adding any yearly excess to the following fiscal year.

75. 5 U.S.C. § 7131(d) provides that "any employee representing an exclusive representative," or "in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest."

76. With respect to the requirement of mutual agreement set forth in § 7131(d), 5 U.S.C. § 7114 (b)(1) provides that agencies have a duty to bargain in good faith that includes the obligation to approach negotiations with a sincere resolve to reach agreement.

77. By purporting to fix a preexisting and specific cap on the amount of official time that an employee may use in a fiscal year, and by purporting to add allegedly excess amounts in one fiscal year to the cap calculation for the following fiscal year, Section 4(a)(ii) of the Official Time Order is contrary to Chapter 71.  It is therefore *ultra vires* and void.

**RELIEF REQUESTED**

WHEREFORE, AFGE prays that this Honorable Court enter an ORDER:

(1) Declaring that Section 4(a)(v) of the Official Time Order is void and contrary to the First Amendment to the United States Constitution;

(2) Declaring that Sections 2(j) and 3(a) of the Official Time Order are *ultra vires* and contrary to 5 U.S.C. § 7131;

(3) Declaring that Section 4(a)(ii) of the Official Time Order is *ultra vires* and contrary to 5 U.S.C. § 7131 and Chapter 71;

(4) Enjoining the defendants from implementing Sections 2(j), 3(a), 4(a)(ii), and 4(a)(v) of the Official Time Executive Order;

(5) Granting plaintiff attorney's fees and costs; and

(6) Granting such other relief as this Court finds necessary and proper.

Respectfully Submitted,

  /s/ Andres M. Grajales
Andres M. Grajales
Deputy General Counsel
D.C. Bar No. 476894
AFGE, Office of the General Counsel
80 F Street, N.W.
Washington, D.C. 20001
Tel.:   (202) 639-6426
Fax.:   (202) 379-2928
Email: andres.grajales@afge.org

  /s/ Matthew W. Milledge
Matthew W. Milledge*
Assistant General Counsel
D.C. Bar No. 496262
AFGE, Office of the General Counsel
80 F Street, N.W.

          Washington, D.C. 20001
          Tel.:     (202) 639-6424
          Fax.:     (202) 379-2928
          Email: matthew.milledge@afge.org
          *Lead Counsel

Attorneys for AFGE